Filed 6/27/22  Kravchuk v. Talor Morrison of California, LLC CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIIA KRAVCHUK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TAYLOR MORRISON OF<br>CALIFORNIA, LLC,<br><br>    Defendant and Respondent. | H048858<br>(Santa Clara County<br>Super. Ct. No. 18CV322457) |

This action arose out of a failed San Jose residential sales transaction involving appellant Mariia Kravchuk, as buyer, and respondent Taylor Morrison of California, LLC (Taylor), as developer/seller.  Kravchuk filed suit on January 24, 2018, alleging one cause of action for breach of written contract against Taylor.  Two and one-half years later, on July 27, 2020, Kravchuk filed a second amended complaint.  In that pleading, she alleged seven causes of action, naming Taylor and eight additional defendants. Taylor filed a demurrer to three causes of action of that pleading and a motion to strike certain allegations.  Taylor then filed a motion for sanctions against Kravchuk under Code of Civil Procedure section 128.7[1] (sanctions motion) for attorney fees and costs incurred in the filing of the demurrer and motion to strike.  Before Taylor's sanctions

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise stated.

motion was heard, and after the court ruled on Taylor's demurrer and motion to strike, Kravchuk, on November 30, 2020, filed a third amended complaint alleging the same seven causes of action and naming all nine defendants. On February 2, 2021, the trial court granted the sanctions motion and awarded Taylor the total sum of $8,220.

On appeal, Kravchuk contends that the trial court erred in granting the sanctions motion. She makes three arguments. First, she asserts that Taylor's notice of motion was defective and that this procedural error precluded the granting of the sanctions motion. Second, she argues that her filing of the third amended complaint—after the filing of the sanctions motion but before it was heard by the court—rendered the motion moot. Third, Kravchuk contends that the underlying allegations in the second amended complaint were based upon evidence and law, and therefore the imposition of sanctions was improper.

We conclude that the Kravchuk forfeited the claim that the notice of motion for sanctions was procedurally defective. We hold further that the sanctions motion was not rendered moot by the filing of the third amended complaint. And we conclude that the trial court did not abuse its discretion by granting Taylor's sanctions motion. Accordingly, we will affirm the order imposing sanctions against Kravchuk in the sum of $8,220.

## I.     PROCEDURAL BACKGROUND

### A.     Pleadings

On January 24, 2018, Kravchuk, then represented by counsel, filed a Judicial Council form complaint against Taylor alleging a claim for breach of written contract.

On December 30, 2019, Kravchuk, as a self-represented litigant, filed a first amended complaint alleging six causes of action against Taylor:  (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) bad faith denial of contract; (4) unjust enrichment; (5) intentional interference with economic advantage; and (6) negligent interference with economic advantage. Taylor filed a demurrer to the first amended complaint that challenged the noncontract causes of action; Taylor also

2

filed a motion to strike portions of the first amended complaint. In opposition to the demurrer and motion to strike, Kravchuk stated that she had filed a wrong version of the first amended complaint and that the filing of the correct version would cure any claimed deficiencies. For this reason, on July 16, 2020, the court sustained the demurrer with leave to amend.

On July 27, 2020, Kravchuk, as a self-represented litigant, filed her second amended complaint, alleging seven causes of action and naming Taylor and eight new defendants, namely, Joyce Lee, James Ganion (Ganion), Collinsworth, Specht, Calkins & Giampaoli, LLP (CSCG), Ulich Balmuth Fisher LLP (UBF), First American Financial Corporation (First American), Olivia Trelles, Tina Longo, and Taylor Beck. The causes of action alleged were (1) breach of contract (against Taylor); (2) breach of implied covenant of good faith and fair dealing (against Taylor); (3) deceit (against all defendants); (4) civil conspiracy (against all defendants except First American and Trelles); (5) aiding and abetting deceit (against all defendants); (6) intentional interference with economic advantage (against all defendants except Taylor); and (7) negligent interference with economic advantage (against all defendants except Taylor). Lee, Longo, and Beck were employees of Taylor. Trelles was an employee of First American. Ganion is an attorney who represented Taylor in the subject transaction, and that while the transaction was pending and before Kravchuk's lawsuit was filed, Ganion was a partner with UBF and then a partner with CSCG.

Kravchuk alleged in the second amended complaint as follows:

On or about March 9, 2017, Kravchuk and Taylor entered into a written contract (the Agreement) involving the purchase and sale of 73 Montecito Vista Drive, Unit #1 in San Jose (the Property). Under the terms of the Agreement, the date of close of escrow for the transaction was " '*following substantial completion of the Home* on a date to be specified in a notice to be provided by Seller to Buyer. *Substantial completion of the Home shall be deemed to have occurred when a certificate of occupancy (or its*

3

*equivalent) has been issued.*' " (Bold italics in second amended complaint.) Kravchuk alleged that neither walk-throughs of the Property (referred to in the Agreement as " 'New Home Orientations' ") nor the close of escrow should have been scheduled until after the City of San Jose (City) issued a Certificate of Occupancy (hereafter, COO) for the Property, which did not occur until January 31, 2018. Before that date, the City rejected repeated attempts by Taylor to obtain a COO for the Property.

Kravchuk alleged that, beginning in October 2017, Taylor "engaged in [a] series of malicious actions towards [Kravchuk] by scheduling [walk-throughs] and dates for 'Close of Escrow' [(COE's)] for [the] Property which should have occurred after (and not before) the issuance of [a] Certificate of Occupancy for [the] Property." There were six walk-throughs and COE's that Kravchuk claimed were scheduled wrongfully and "in bad faith" by Taylor between October and December 2017. Taylor "fraudulently claimed" on November 9, 2017, that a COO for the Property had issued. On November 17, Ganion, on behalf of Taylor, in a notice of default to Kravchuk claimed that a COO had issued and "fraudulently attempted to compel" her to close escrow before a COO issued. On November 28, Taylor "wrongfully terminated" the Agreement based upon Kravchuk's failure to close escrow by November 22. Also on November 28, defendants Taylor and Lee "kept fraudulently claiming" that the City had issued a COO for the Property. On December 11 and 19, Ganion made further attempts "to compel [Kravchuk] to close [e]scrow" without the issuance of a COO, "while fraudulently claiming that [a] Certificate of Occupancy [had] issued." On December 21, Ganion and Taylor demanded that Kravchuk immediately deposit into escrow the full purchase price "while fraudulently claiming that [a] Certificate of Occupancy [had] issued."

Kravchuk was ready, willing, and able to close escrow. But Taylor sold the Property to a third party on January 25, 2018, for $832,842, or $163,097 more than the price in the Agreement. Taylor breached the Agreement by refusing to permit Kravchuk to close escrow on the Property as agreed.

4

The claim for deceit was founded upon the communications by Taylor and Ganion alleged in the second amended complaint as stated above. Kravchuk alleged that the "[d]efendants intentionally misrepresented to [Kravchuk] that the construction on [the] Property was completed and [the] Property was ready to be occupied, that it was authorized under [the] Contract to proceed with the walkthrough of [the] Property as of November 15, 2017, and that it possessed the right to sell [the] Property as the [COO] . . . had been issued by the [City]." Kravchuk also alleged that Ganion, CSCG, and Ulich "attempted to wrongfully compel [Kravchuk] to close [e]scrow on [the] Property by sending threats to [her] and wrongfully stating that [the] Property was (while it was not) allowed to be used and occupied and that [Kravchuk] would lose her deposit if [she] would not obey [Taylor's] . . . demands and that [she] would be penalized for each day of not closing [e]scrow in the amount of $1,000 a day . . . ." Kravchuk made similar allegations in support of her civil conspiracy and aiding and abetting deceit claims.

On August 24, 2020, Taylor filed a motion to strike the second amended complaint, or, in the alternative, certain portions of that pleading. On the same date, Taylor filed a demurrer to the third, fourth, and fifth causes of action of the second amended complaint. As discussed in the next section, on November 12, 2020, the court partially sustained Taylor's demurrer and partially granted its motion to strike.

**B.      Motion for Sanctions**

On September 25, 2020, Taylor served upon Kravchuk a motion for sanctions against Kravchuk pursuant to section 128.7. The motion was filed with the court on October 21, 2020.[2] Taylor argued, inter alia, that allegations contained in the second amended complaint were contradicted by deposition testimony and exhibits attached to

_____

[2] Taylor filed an amended notice of motion for sanctions on December 2, 2020. Kravchuk filed a motion to augment the record to include this amended notice of motion, as well as her amended notice of appeal filed July 14, 2021. We grant Kravchuk's motion to augment the record.

5

Kravchuk's second amended complaint, and the allegations lacked factual or legal support. Taylor sought monetary sanctions in the total amount of $20,772. The sanctions requested included (a) $12,552, which Taylor claimed represented the costs it incurred in addressing the second amended complaint by filing a demurrer and a motion to strike; and (b) $8,220, representing Taylor's costs in preparing the sanctions motion.

After the filing of the sanctions motion but before it was heard, the court ruled on Taylor's motion to strike and demurrer relative to the second amended complaint. In an order filed on November 12, 2020, the court overruled Taylor's demurrer to the third cause of action for deceit, and it sustained with leave to amend the demurrer to the fourth cause of action for civil conspiracy and fifth cause of action for aiding and abetting. In the same order, the court denied Taylor's motion to strike the second amended complaint in its entirety, and it granted in part and denied in part Taylor's motion to strike specific allegations of that pleading. On November 30, 2020, Kravchuk filed a third amended complaint alleging the same seven causes of action and naming all nine defendants.

On January 7, 2021, Kravchuk filed " 'limited' opposition" to Taylor's sanctions motion. (Capitalization omitted.) She argued that (1) the motion was moot, and (2) Taylor's underlying arguments to the effect that Kravchuk's allegations in the second amended complaint had no evidentiary or legal support were without merit.

A hearing on the motion occurred on February 2, 2021. The record reflects that there were no appearances and that no party contested the court's tentative ruling. The court adopted the tentative ruling at that time. The court granted the motion and awarded Taylor sanctions in the amount of $8,220.[3] The court held, inter alia, that certain allegations in the second amended complaint were "inherently inconsistent," the evidence

---

[3] The court denied without prejudice Taylor's request for sanctions of $12,552 for its costs associated with the filing of its demurrer and motion to strike relative to the second amended complaint.

6

presented in the motion demonstrated that the allegations "lack[ed] evidentiary support," and Kravchuk's opposition did not refute Taylor's showing.

Kravchuk filed a timely notice of appeal from the order granting Taylor's sanctions motion.[4]

## II. DISCUSSION

### A. Motions for Sanctions Under Section 128.7

Under section 128.7, when an attorney or self-represented litigant presents a pleading, motion or similar paper to the court, he or she makes an implied "certification" as to its legal and factual merit; that attorney or litigant is subject to sanctions for a violation of this certification. The purpose of section 128.7 is "to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers." (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 514 (*Musaelian*).) As is relevant here, by presenting a pleading, the litigant impliedly certifies that "(1) [i]t is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[; ¶] (2) [t]he claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[; ¶] (3) [t]he allegations and other factual contentions have evidentiary support . . . [; and ¶] (4) [t]he denials of factual contentions are warranted on the evidence . . . ." (§ 128.7, subd. (b).) Section 128.7 is

_____

[4] On March 3, 2021, Kravchuk filed a motion for reconsideration (§ 1008) of the court's order granting Taylor's sanctions motion. On July 9, 2021, the court denied the motion for reconsideration of the order granting the sanctions motion. Thereafter, on July 14, 2021, Kravchuk filed a purported amended notice of appeal, identifying the order denying her motion for reconsideration as the order from which the appeal was taken. (See *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1680 [order denying motion for reconsideration is not an appealable order].) Kravchuk does not present argument in her briefs concerning the court's order denying the motion for reconsideration. She has thus abandoned any appeal of that order. (See *Tanner v. Tanner* (1997) 57 Cal.App.4th 419, 422, fn. 2 [appellate court treats as partial abandonment of appeal an appellant's failure to challenge in opening brief an order specified in notice of appeal].)

7

"modeled, almost word for word, on rule 11 of the Federal Rules of Civil Procedure . . . ." (*Laborde v. Aronson* (2001) 92 Cal.App.4th 459, 467, disapproved of on other grounds by *Musaelian*, *supra*, 45 Cal.4th at p. 520.) Under section 128.7, "there are basically three types of submitted papers that warrant sanctions: factually frivolous (not well grounded in fact); legally frivolous (not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law); and papers interposed for an improper purpose. [Citations.]" (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167 (*Guillemin*).)

The trial court applies "an objective standard in making its inquiry concerning the attorney's or party's allegedly sanctionable behavior in connection with a motion for sanctions brought under section 128.7. [Citations.]" (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921 (*Optimal Markets*).) Unlike sanctions under section 128.5 that requires a finding of subjective bad faith, "section 128.7 imposes a lower threshold for sanctions . . . that the conduct [merely] be 'objectively unreasonable.' " (*Guillemin*, *supra*, 104 Cal.App.4th at p. 167.) Thus, for instance, the trial court's determination of whether an action is frivolous under section 128.7 is made under an objective standard. (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 401.)

The statute includes a 21-day safe harbor provision under which the party to correct or withdraw the offending conduct. (§ 128.7, subd. (c)(1).) By so providing, "section 128.7 is designed to be remedial, not punitive. [Citation.]" (*Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591.) Thus, under the statute's two-step procedure, first, the moving party " 'must serve a notice of motion for sanctions on the offending party at least [21] days before filing the motion with the court, which specifically describes the sanctionable conduct. ([§ 128.7, subd. (c)(1).]) Service of the motion on the offending party begins a [21]-day safe harbor period during which the sanctions motion may not be filed with the court. (*Ibid.*) If the pleading is withdrawn, the motion for sanctions may not be filed with the court. [Citation.] If the pleading is not

8

withdrawn, the motion for sanctions may then be filed. [Citation.]' [Citation.]" (*Optimal Markets*, *supra*, 221 Cal.App.4th at p. 920.)

As a general rule, the appellate court reviews an award of sanctions under section 128.7 for abuse of discretion. (*Guillemin*, *supra*, 104 Cal.App.4th at p. 167.) "But where a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review. [Citations.]" (*Optimal Markets*, *supra*, 221 Cal.App.4th at pp. 921-922.)

In determining whether the trial court abused its discretion, "[w]e presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice. [Citation.]" (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441.)

## B.     No Error by the Trial Court

We perceive from a review of her appellate briefs that Kravchuk asserts three arguments—two procedural and one substantive—in support of her position that the trial court erred in granting Taylor's sanctions motion. First, Kravchuk argues that the notice of motion was defective because it did not bear the date and time of the hearing on the motion. Second, she contends that her filing of the third amended complaint rendered the previously-filed sanctions motion moot. Third, Kravchuk asserts that the trial court erred in granting the motion, based upon reasoning she claims was faulty, namely that Taylor's failure to obtain a COO for the Property was not a contractual bar to its insistence that Kravchuk close escrow. We address these arguments below.

### 1.     *Objection to Any Notice Defect Was Forfeited*

Kravchuk argues that the notice of motion for sanctions was procedurally defective under sections 128.7 and 1010. Under section 128.7, subdivision (c)(1), a notice of motion for sanctions "shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the

9

motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Under section 1010, the written "notice of a motion . . . must state *when*, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based." (Italics added.) Specifically, she argues that the notice of motion for sanctions that Taylor filed on October 21, 2020, was defective because it did not state "when [the motion would] be made" as provided in section 1010. Kravchuk asserts that it was not until December 2, 2020—after the superior court clerk had inserted the date and time of the hearing for the sanctions motion—that Taylor served an amended notice identifying when the sanctions motion would be heard. Kravchuk contends that Taylor's failure to include the date and time of the motion in the original notice was a fatal defect.[5]

Kravchuk filed her opposition to the sanctions motion on January 7, 2021—*after* Taylor had filed its notice of motion (October 21, 2020) and its amended notice of motion

---

[5] Taylor in its respondent's brief acknowledges that when it served and filed the motion, it did not include the date and time of the hearing in the notice of motion. Taylor explains that this omission was due to the superior court's change in procedure as a result of the COVID-19 global pandemic. As stated by Taylor, "[a]t the time [Taylor] served its motion, the trial court accepted law and motion filings electronically, and the hearing dates for motions were expressly not to be included in the moving papers' captions. After being submitted to the trial court electronically, the court would process a submitted motion and then assign a hearing date, and motions would be re-noticed." In support of this position, Taylor has filed a request for judicial notice of a notice and an order of the superior court issued in response to the COVID-19 pandemic, and superior court local rules (identified as exhibits A through E). Additionally, related to Kravchuk's argument discussed in part B.3., *post*, Taylor attaches to the request for judicial notice certain provisions of the San Jose Municipal Code, and a bulletin issued by the San Jose Planning, Building & Code Enforcement Department, Building Division (identified as exhibits F through K). Because we conclude that Kravchuk has forfeited her challenge to the notice of motion, we will deny Taylor's request for judicial notice of the documents identified in the request as exhibits A through E. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [judicial notice denied for materials not relevant to issues decided on appeal].) We will grant Taylor's request for judicial notice of the documents identified in the request as exhibits F through K.

(December 2, 2020). She raised no objection to the sufficiency of the notice in her opposition. Kravchuk's failure to object below to this alleged notice defect precludes her from raising the challenge here.

" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1, original italics.) Although the failure to raise an objection in the trial court is often referred to as a waiver, strictly speaking, it is a forfeiture of the right to assert the objection on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2, superseded on other grounds by statute as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)

This forfeiture rule applies to unasserted procedural challenges to notices of motions. (See *Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930.) "A party who appears at the hearing on a motion and contests the motion on the merits without objecting to a defect or irregularity in the notice of motion ordinarily is deemed to waive the defect or irregularity, including the failure to serve a notice of motion the prescribed number of days before the hearing. Courts have applied this rule where the party failed to object at the hearing [citations], where the objection was deemed inadequate [citations], and where the party may have objected but failed to show prejudice resulting from the defective notice. [Citations.] Courts applying the waiver rule generally have concluded that the party's appearance at the hearing and opposition on the merits showed that the notice 'served its purpose,' despite any defect [citations], and that any defect in the notice did not prejudice the party's preparation for the hearing and opportunity to be

11

heard. [Citations.]" (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 342-343 (*Arambula*).)

Thus, in *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826 (*Falcone & Fyke*), a panel of this court considered an appellant's challenge to an order imposing sanctions against her under section 128.7. The appellant asserted on appeal that she had received insufficient notice because, although she was served with the motion 21 days prior to the hearing, because the service was by mail, her safe harbor period should have been extended by five days. (*Falcone & Fyke*, *supra*, at p. 826.) The appellant failed to assert the notice objection below, and this court held that she had therefore waived the challenge, concluding "[the appellant] had ample opportunity to raise the objection below. Her failure to do so deprived [the respondent] of the chance to argue the issue or cure the alleged error and prevented the trial court from making any ruling on the point." (*Ibid.*)

*Falcone & Fyke* is on point. The circumstances that are the bases for Kravchuk's challenge to the notice of motion here were known to her well before she filed her opposition. She did not raise the challenge in her opposition papers, nor did she appear at the hearing to argue the matter. Kravchuk has forfeited the challenge to the notice provided in the sanctions motion. (See *Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 826; *Arambula*, *supra*, 128 Cal.App.4th at pp. 342-343.)[6]

_____

[6] We requested that the parties submit supplemental letter briefs addressing two questions: (1) whether Kravchuk asserted before the trial court that the notice of motion was defective; and (2) assuming Kravchuk did not raise the issue below, whether it was waived (forfeited) on appeal. We have received and considered the parties' letter briefs. Kravchuk acknowledges that she did not object to the notice at the trial level. She asserts, however, that an appellate court's application of the waiver (forfeiture) doctrine is not automatic, and she requests that this court exercise its discretion to consider the notice issue here. We decline that request.

12

### 2. *The Motion Was Not Moot*

Kravchuk contends—as she did below—that the filing of her third amended complaint on November 30, 2020, rendered the sanctions motion (filed on October 21, 2020) moot. Kravchuk relies on *JKC3H8 v. Colton* (2013) 221 Cal.App.4th 468 (*JKC3H8*) in support of her position. We reject Kravchuk's claim that the sanctions motion was moot.

" ' "[A]n amendatory pleading supersedes the original one, which ceases to perform any function as a pleading." ' (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884.) . . . 'Because there is but one complaint in a civil action [citation], the filing of an amended complaint moots a motion directed to a prior complaint. [Citation.]' [Citation.] Thus, the filing of an amended complaint renders moot a demurrer to the original complaint. [Citation.]" (*JKC3H8*, *supra*, 221 Cal.App.4th at p. 477.) The *JKC3H8* court was concerned with whether the filing of an amended complaint rendered moot a special motion to strike the superseded complaint under the anti-SLAPP statute (§ 425.16). The appellate court stated that "an amended complaint [also] render[s] moot an anti-SLAPP motion directed to a prior complaint, with the following caveat: A plaintiff or cross-complainant may not seek to subvert or avoid a ruling on an anti-SLAPP motion by amending the challenged complaint or cross-complaint in response to the motion. [Citations.]" (*JKC3H8*, *supra*, at pp. 477-478.) But in *JKC3H8*, because the amended complaint was filed *before* the special motion to strike the original complaint was filed, the appellate court held that the motion to strike had been rendered moot because "there was no pending anti-SLAPP motion as the time of the amendment." (*Id.* at p. 478.)

By analogy to the circumstances addressed by the court in *JKC3H8*, *supra*, 221 Cal.App.4th 468 concerning the impact of the filing of an amended pleading upon a special motion to strike the superseded pleading, whether a motion for sanctions under section 128.7 is rendered moot depends upon the timeline of the filing of the amended

13

pleading and the sanctions motion. Here, *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967 (*Eichenbaum*) is instructive. There, in response to being served with a fourth amended complaint, the defendant filed a demurrer, motion to strike, and a motion for sanctions under section 128.7. (*Eichenbaum*, *supra*, at p. 972.) The sanctions motion was heard and submitted, but before the court issued a ruling, the plaintiff filed a voluntary dismissal without prejudice of the fourth amended complaint, thereby mooting the defendant's demurrer and motion to strike. (*Id.* at pp. 972-973.) The trial court held that the plaintiff's filing of the dismissal did not deprive the court of jurisdiction to rule on the submitted motion, and it granted defendant's motion for sanctions. (*Id.* at p. 973.)

The appellate court affirmed, rejecting the plaintiff's argument that the filing of the dismissal had deprived the trial court of jurisdiction to rule on the sanctions motion. (*Eichenbaum*, *supra*, 106 Cal.App.4th at p. 974.) The court observed that "[t]he availability of section 128.7 sanctions against an offending plaintiff that has voluntarily dismissed its action depends upon whether the sanctions motion was filed before or after the dismissal." (*Id.* at p. 975.) The *Eichenbaum* court noted that another court had "recently held that a defendant could not obtain section 128.7 sanctions by filing a motion for them after a voluntary dismissal[, concluding] . . . that to allow such a motion 'would completely defeat the purpose of the safe harbor provision.' [Citation.]" (*Ibid.*, quoting *Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 414.) Contrasting the procedural timing in *Hart* of the dismissal, the court in *Eichenbaum* held: "[T]he relevant considerations point exactly the opposite in a case, such as this one, where a voluntary dismissal is taken *after a motion for section 128.7 sanctions has been brought.* In such a case, the defendant moves for sanctions *only after* the plaintiff has been allowed the 21-day . . . safe harbor to rectify its sanctionable conduct, but has not done so. In these circumstances, *belated abandonment of the case does not fulfill the object of the statute, and the policies favoring allowance of sanctions remain extant notwithstanding the dismissal.* [Citation.]" (*Eichenbaum*, *supra*, at p. 975, italics added.)

14

Similarly, in *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 183 (*Bucur*), the plaintiffs filed two motions for sanctions under section 128.7, one relating to the complaint and the second related to the first amended complaint filed after service and filing of the first sanctions motion. The trial court granted the defendant's sanctions motions, concluding that the plaintiffs' pleadings were not supported by the facts, were filed for an improper purpose, and the plaintiffs failed to withdraw the pleadings during the safe harbor period. (*Bucur*, *supra*, at p. 184.) The appellate court affirmed, finding, inter alia, that the "filing of the first amended complaint *after expiration of the safe harbor period*, and following full briefing on [the defendant's] first motion for sanctions did not absolve [the plaintiffs] of section 128.7 sanctions relating to the filing of the original complaint. [Citation.]" (*Id.* at p. 191, citing *Eichenbaum*, *supra*, 106 Cal.App.4th at pp. 975-976, italics added; see also *Banks v. Hathaway, Perrett, Webster, Powers & Chrisman* (2002) 97 Cal.App.4th 949, 954 ["order sustaining a demurrer without leave to amend does not bar a motion for section 128.7 sanctions unless the order is reduced to a judgment before the sanctions motion is served and filed"].)

Here, the sanctions motion under section 128.7 was filed by Taylor on October 21, 2020. Kravchuk filed her third amended complaint on November 30, 2020. The hearing on the sanctions motion occurred on February 2, 2021. The filing of the third amended complaint did not render Taylor's sanctions motion moot. (See *Bucur*, *supra*, 244 Cal.App.4th at p. 191; *Eichenbaum*, *supra*, 106 Cal.App.4th at p. 975.)[7]

---

[7] Kravchuk asserts that the trial court erroneously stated in the order granting sanctions that the hearing on Taylor's demurrer and motion to strike the second amended complaint were vacated because the filing of the third amended complaint rendered the proceedings moot. It is true that the court below in fact ruled on the demurrer and motion to strike on November 12, 2020, and Kravchuk thereafter filed a third amended complaint on November 30, 2020. But the erroneous recital of this procedural matter concerning the hearing on the demurrer and motion to strike has no impact on the correctness of the trial court's determination that the filing of the third amended complaint did not render the sanctions motion moot. (See *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205,

### 3. *Order Imposing Sanctions Was Not an Abuse of Discretion*

In its sanctions motion, Taylor focused upon several categories of allegations in the second amended complaint that it claimed were frivolous, lacking in evidentiary support, and/or lacking in legal support. We will address here four categories of allegations made by Kravchuk in the second amended complaint. The allegations relate to (1) false statements by the Taylor defendants[8] to Kravchuk concerning the Property being ready to be safely occupied; (2) false statements by the Taylor defendants to Kravchuk that the City had issued a COO (Certificate of Occupancy) for the Property; (3) claiming that Taylor had refused to allow Kravchuk to close escrow; and (4) a request for attorney fees incurred in the suit.

### a. **Property Ready to be Safely Occupied**

Kravchuk alleged in the second amended complaint that, beginning in October 2017, Taylor "engaged in [a] series of malicious actions towards [Kravchuk]" by scheduling a series of walk-throughs and escrow closings "[w]hile knowing that [the COO had] not issued for the Property and [the] City . . . [had] not approve[d the] Property to be safely used and occupied." Similar allegations to the effect that the Taylor defendants falsely claimed that the City had approved the Property to be safely used and occupied appeared in at least four other paragraphs of the second amended complaint.[9]

---

1225 [appellate court "may affirm the court's sanctions order on any ground supported by the record"].)

[8] Because the allegations in the second amended complaint identify representations by Taylor and others, including counsel, on Taylor's behalf, we refer to Taylor, Lee, Ganion, CSCG, UBF, Longo, and Beck collectively as the Taylor defendants.

[9] In paragraph 52 of the second amended complaint, Kravchuk alleged that the Taylor "[d]efendants intentionally misrepresented to [Kravchuk] that the construction on [the] Property was completed and [the] Property was ready to be occupied." In paragraph 54, Kravchuk alleged that the Ganion, CSCG, and Ulich "attempted to wrongfully compel [Kravchuk] to close [e]scrow on [the] Property by sending threats to [her] and wrongfully stating that [the] Property was (while it was not) allowed to be used and occupied . . . ." In paragraph 63, Kravchuk alleged that Taylor intentionally

16

Taylor in its sanctions motion presented evidence refuting these allegations through deposition testimony from Steve Kroot, a City building inspector. Significantly, that testimony was given on May 15, 2019, or 14 months before Kravchuk filed her second amended complaint. Kroot performed inspections of the Indigo development, which included the Property, Unit 1, that Taylor agreed to sell to Kravchuk. Kroot testified that on November 9, 2017, he went to 73 Montecito Vista Drive, the building that included Unit 1, signed off on the electrical, plumbing, mechanical, and building on the site, and indicated that "all the units were okay to occupy." Kroot testified that by signing off on the building, the owners or tenants could then move into their units, and that they "would have had to be fully completed and livable." Kroot also explained that a COO is generated for an entire building, not for each unit, and that the COO would be issued after final inspection for the entire building. Kroot testified that after the units have been inspected, they can be occupied even if no COO has issued for the entire building.

Kravchuk submitted no evidence to contradict Kroot's deposition testimony. Other than arguing that escrow could not close under the Agreement unless the City had issued a COO or a temporary certificate of occupancy for the Property, Kravchuk did not offer anything below to respond to Taylor's position that she had no factual basis for alleging that Taylor had falsely stated that the City had approved the Property to be safely occupied. And in her appeal, Kravchuk does not point to evidence in the record that

---

misrepresented to her (and all defendants were aware of Taylor's deceit) by stating that the "Property was allowed (while it was not) by [the] City . . . to be used and occupied." And Kravchuk alleged in paragraph 64 that Taylor (with the defendants' knowledge) "was fraudulently demanding [Kravchuk] to close [e]scrow despite of the fact that [the] Property was not authorized by [the] City . . . to be used or occupied."

17

would support her multiple allegations that Taylor had falsely stated that the City had approved the Property to be safely occupied.[10]

### b. City's Issuance of COO for the Property

In the second amended complaint, Kravchuk alleged that on November 28, 2017, defendants Lee and Taylor sent a letter advising that she was in default in which Taylor "kept fraudulently claiming that [a] Certificate of Occupancy was issued for [the] Property by [the] City of San Jose." There are at least five other paragraphs of the second amended complaint in which Kravchuk alleged that Ganion, as Taylor's attorney, falsely claimed that a COO had issued for the Property. The alleged false statements concerning the issuance of a COO, in all six paragraphs of the pleading, were reflected in writings attached to the second amended complaint. The writings were dated between November 28 and December 21, 2017. We have reviewed each of the exhibits, none of which contained a statement to the effect that the City had issued a COO for the Property.

Kravchuk submitted no evidence to support the veracity of her allegations in the above-mentioned six paragraphs of the second amended complaint. Kravchuk did not offer anything to respond to Taylor's position that there was no factual basis for alleging that Taylor had falsely stated that the City had issued a COO for the Property. And in her appeal, Kravchuk does not point to evidence in the record that would support her multiple allegations that Taylor had falsely stated that the City had issued a COO for the Property.

---

[10] Kravchuk's principal argument on the merits of the parties' dispute is, as it was below, that regardless of Kroot's testimony, escrow could not close on the Property and it could not be legally occupied until a COO or a temporary certificate of occupancy (TCOO) for the Property had been issued by the City. Taylor disputes these contentions. Because we conclude that the trial court did not abuse its discretion in finding a lack of evidentiary basis for Kravchuk's allegations that (1) Taylor falsely stated that the City had found the Property ready to be safely occupied, (2) Taylor had falsely stated that a COO had issued for the Property, (3) Taylor had refused to permit Kravchuk to close escrow; and (4) she was entitled to recover attorney fees, we need not address the merits of Kravchuk's COO/TCOO argument here.

18

### c.  Refusal to Permit Kravchuk to Close Escrow

Kravchuk alleged in the second amended complaint in her breach of contract claim that Taylor "with [the] help of other co-conspirators . . . breached [the] Contract by refusing to allow [Kravchuk] to close escrow on the purchase of [the] Property." This allegation was contradicted by documentary evidence attached as exhibits to Kravchuk's pleading, as well as by other evidence presented in Taylor's sanctions motion.

On November 17, 2017, Ganion sent a letter to Kravchuk's counsel, Alex Gortinsky, in which he, inter alia, stated that (1) Kravchuk was in default; (2) Taylor wanted to give "[Kravchuk] another opportunity to purchase the home"; (3) extension fees were owed under the Agreement, but they would be waived by Taylor if Kravchuk closed escrow by November 22; (4) Kravchuk needed to facilitate a prompt close of escrow; and (5) "Taylor . . . wants [Kravchuk] to buy the home." In a letter to Gortinsky dated December 11, 2017, Ganion advised that although escrow was canceled because of Kravchuk's failure to move forward, Taylor was prepared to give her another opportunity if she stated unequivocally that she would close escrow by December 28. Ganion again wrote to Gortinsky on December 18, 2017, urging that "if [Kravchuk] really does wish to buy the home, then [Taylor] needs her to prove it" by signing escrow documents by December 22.

In her deposition, Kravchuk was asked to list all reasons that she did not proceed with the transaction. Her response was "[b]ecause I was not sure that the house is complete because they did not allow me in." In response to the follow-up question of whether there was "[a]nything else," Kravchuk testified, "That's it. At [the] present moment[,] . . . I can't remember anything else." This position was contradicted by documentary evidence and discovery.

As to whether Taylor denied Kravchuk access to the Property for a walk-through, Krystyna Taryanik testified that she inspected the Property on Kravchuk's behalf on November 8, 2017, pointed out items that needed repair in a list that she signed, and later

did a second inspection of the Property to determine if the listed items had been addressed.[11] Kravchuk admitted in a verified response to requests for admissions that the individual performed a walk-through of the Property on Kravchuk's behalf on November 8 and that the individual signed a form confirming that walk-through and identifying potential repair items observed. Further, in connection with Taylor's communications to encourage Kravchuk to move ahead with closing escrow, Ganion advised Gortinsky on December 18 and 21, 2017, that Taylor would permit another walk-through, albeit not as a condition of closing escrow. Kravchuk's attorney, Gortinsky, was also advised, at least as early as November 17, 2017 (in Ganion's letter attached to the second amended complaint), that the Property was habitable and that the City had signed off for its occupancy on November 8.

Kravchuk's allegation in the second amended complaint that Taylor "breached [the] Contract by refusing to allow [Kravchuk] to close escrow on the purchase of [the] Property" is further called into question by additional correspondence not part of the pleading that was included in Taylor's sanctions motion. On November 17, 2017, Gortinsky wrote to Ganion stating that Kravchuk was willing and able to close escrow, but that she had certain demands, including the scheduling of a final walk-through, Taylor's waiver of extension fees under the Agreement, reimbursement of Kravchuk's travel expenses ($1,900), payment of attorney fees, and two additional weeks' notice for the closing of escrow. Similarly, Gortinsky advised Ganion in an e-mail of January 10, 2018, that Kravchuk's demands for completing the transaction included a 30-day notice for closing escrow, a final walk-through, and reimbursement of legal fees of approximately $3,800.

---

[11] The Agreement provided that the identification of items that needed repair on a New Home Orientation List did not furnish a basis for the buyer's delaying the close of escrow. Kravchuk was advised of this provision in Ganion's letter of November 17, 2017, to her counsel.

20

Kravchuk submitted no evidence or argument supporting a factual basis for her allegation that the Taylor defendants refused to permit her to close escrow on the Property. And in her appeal, Kravchuk does not point to evidence in the record that would support her allegation that Taylor breached the Agreement by refusing to permit her to close escrow.

### d.    Prayer for Attorney Fees

The second amended complaint included a prayer for attorney fees. In its sanctions motion, Taylor argued that the allegation had no evidentiary or legal support.

Under the terms of the Agreement, which was attached as an exhibit to Kravchuk's second amended complaint, in the event of a dispute arising out of the Agreement, each side would bear her/its own attorney fees. Further, "[u]nder the American rule, as a general proposition each party must pay his [or her] own attorney fees. This concept is embodied in section 1021 of the Code of Civil Procedure, which provides that each party is to bear his [or her] own attorney fees unless a statute or the agreement of the parties provides otherwise." (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504, fn. omitted.)

The original complaint filed by Kravchuk's former attorney, Gortinsky, included a prayer for attorney fees in two locations of the pleading. Taylor's counsel advised Gortinsky that these attorney fee allegations were subject to a motion to strike because the Agreement provided that each party would bear her/its own attorney fees. In response, in March 2018, Gortinsky signed a stipulation that allegations in the complaint regarding Kravchuk's right to attorney fees were stricken.

In her opposition, Kravchuk submitted no evidence or argument identifying a factual or legal basis for her prayer for attorney fees. Her response was that, because

after the filing of the sanctions motion, she filed a third amended complaint in which she did not seek attorney fees, the question was moot.[12] We reject this argument.

The prayer for attorney fees in the second amended complaint had no basis in fact or law. Her lack of entitlement to fee recovery if she prevailed in the litigation was acknowledged by her former counsel as early as March 2018, more than two years before Kravchuk filed the second amended complaint. Further, her unsupported attorney fee allegation necessitated Taylor's filing of a motion to strike. And, critically, she failed to "withdraw[] or appropriately correct[]" the improper allegation concerning attorney fees within the 21-day safe harbor period before Taylor filed the sanctions motion. (§ 128.7, subd. (c)(1).) Kravchuk's belated action of filing a third amended complaint did not moot Taylor's motion insofar as it asserted that Kravchuk's prayer for attorney fees was unjustified. (See *Bucur*, *supra*, 244 Cal.App.4th at p. 191.)[13]

### e. Conclusion

The trial court concluded that Taylor had established its claim for sanctions under section 128.7. It held, inter alia, that Kravchuk's contract allegations in the second amended complaint that Taylor refused to allow her to close escrow "are inherently inconsistent, and notwithstanding, the evidence set forth in the motion demonstrates that they lack evidentiary support. Specifically, the evidence indicates that [Taylor] did not

---

[12] Kravchuk's appellate briefs contain no argument justifying her prayer for attorney fees in the second amended complaint.

[13] Taylor also argued below that Kravchuk was subject to sanctions for asserting without legal or factual basis a prayer "[f]or actual, compensatory, incidental and consequential damages according to proof, but not less than $1,000,000.00." Taylor argued that the allegations in the second amended complaint supported damages of no more than $163,097, the difference between the price Kravchuk agreed to pay under the Agreement and the price paid for the Property in January 2018 when Taylor sold to a third party. Kravchuk did not address this argument in her opposition. While Taylor's argument appears on its face to offer an additional ground for awarding sanctions under section 128.7, the trial court did not address this issue. Accordingly, we do not consider it in determining whether the court abused its discretion in granting the sanctions motion.

prevent [Kravchuk] from closing escrow but rather, was proactive in attempts to facilitate close of escrow, and provided [Kravchuk] several reasonable opportunities to do so. However, [Kravchuk], instead of taking action to close escrow, submitted a list of demands which were not conditions precedent to close escrow under the terms of the purchase agreement. [¶] In opposition, [Kravchuk] does not present facts to refute this evidence, and the evidence was known to [Kravchuk] prior to filing the [second amended complaint]." The trial court concluded further that allegations supporting Kravchuk's misrepresentation claims that centered on whether Taylor had falsely stated that a COO had been issued were refuted by Kroot's deposition testimony, and that those facts had been known to Kravchuk when she filed the second amended complaint. And the court concluded that Kravchuk was aware that she had no factual or legal entitlement to attorney fees at the time she requested them in the second amended complaint.

As discussed, *ante*, there were substantial grounds for concluding that Kravchuk made a number of factual allegations in her second amended complaint that were "factually frivolous (not well grounded in fact)." (*Guillemin*, *supra*, 104 Cal.App.4th at p. 167.) These allegations concerned (1) alleged false statements to Kravchuk concerning the City advising that the Property was ready to be safely occupied; (2) alleged false statements to Kravchuk that the City had issued a COO for the Property; (3) claiming that Taylor had refused to allow Kravchuk to close escrow; and (4) a prayer for attorney fees. Additionally, Kravchuk's prayer for attorney fees was "legally frivolous (not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law)." (*Ibid.*) The trial court did not abuse its discretion in awarding sanctions against Kravchuk under section 128.7 to Taylor in the amount of $8,220. (See *Guillemin*, *supra*, at p. 167.)[14]

---

[14] Kravchuk does not challenge on appeal the amount of the sanctions award.

23

## III.    DISPOSITION

The February 2, 2021 order granting respondent Taylor Morrison of California, LLC's motion for sanctions under Code of Civil Procedure section 128.7, awarding respondent sanctions in the sum of $8,220 to be paid by appellant Mariia Kravchuk, is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:


_____
DANNER, J.



_____
WILSON, J.



*Kravchuk v. Taylor Morrison*
**H048858**